IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

CHARLES KANE, #360-123,  \*
    Petitioner,
    v.       \*    CIVIL ACTION NO. PWG-13-3246

GREGG L. HERSHBERGER, et al.,  \*
    Respondents.
                        \*\*\*\*\*

## MEMORANDUM

Petitioner Charles Kane is an inmate in the Maryland Correctional Institution in Hagerstown, Maryland. After losses at trial, appeal, collateral review, and appeal of collateral review, Petitioner seeks federal habeas review of his state court conviction pointing to numerous instances of ineffective counsel as grounds for relief. Pet., ECF No. 1. Because several of Kane's claims may be dismissed due to procedural default and the remaining three ineffective counsel claims are without merit, I WILL DENY the Petition and WILL DECLINE to issue a certificate of appealability.

I. **Procedural History**

On September 10, 2009, a jury sitting in the Circuit Court for Dorchester County convicted Kane of second-degree child abuse, sex abuse of a minor, second-degree rape, attempted second-degree rape, and second-degree assault. Resp., ECF No. 6, Tr. at 147-56.[1] On November 16, 2009, the court imposed a combined sentence of forty-five years imprisonment. Resp., Ex. 6, Tr. at 28-30. Kane's conviction and sentence were affirmed by the Court of Special Appeals of Maryland in an unreported opinion filed on October 24, 2011, with the mandate

---

[1] This Memorandum references the pagination assigned through the court's electronic docketing system. Respondents' exhibits are not electronically filed and have been submitted in paper format. Unless otherwise denoted, record citation is based on the Response, ECF No. 6.

issuing on November 23, 2011.[2] Resp., Ex. 9. Kane did not seek further review in the Court of Appeals of Maryland, and his judgment of conviction became final for direct appeal purposes on December 8, 2011, when the time for doing so expired.[3]

On February 22, 2012, Kane initiated collateral review of his conviction by filing a petition for post-conviction relief in the Circuit Court for Dorchester County. Resp., Ex. 10. Kane alleged that: (A) trial counsel was ineffective for failing to (1) call an expert to challenge DNA evidence; (2) request a juror roll call to identify four jurors; (3) object to the State's failure to prove the penetration element of second-degree rape; (4) recall the State's witnesses; (5) object to jury instructions on sexual offense and second-degree rape; and (6) seek to suppress evidence based on activity that occurred on private property. Kane also alleged (B) ineffective assistance of appellate counsel for failing to raise (7) the State's discovery violation with respect to the testimony of a forensic nurse; and (8) the State's failure to prove the penetration element of second-degree rape and the "care, custody, and responsibility" element of child abuse. Resp., Exs. 10 & 11. On September 6, 2012, post-conviction relief was denied. Resp., Ex. 11. Kane filed an application for leave to appeal the denial of post-conviction relief, stating the following:

> Error of Court: The post conviction court never address[ed] all of the petitioner's allegations of error raised on petitioner['s] post conviction. Allegations such as Petitioner['s] Allegation #IV, VI, and others. Post Conviction Court Error in many area[s] of Petitioner['s] Post Conviction. Such as Elements, that must be establish[ed] to the Juror's [sic] to convict Petitioner of said crimes. The Court never address[ed] them to jury. Juror 11, 13, 25, 29 [were] never question[ed;] however they set [sic] on the jury. Post Conviction Court never address[ed] trial counsel['s] and the trial court['s] error's [sic] of Court trying to establish Defence

---

[2]   Kane raised two claims of trial court error in (1) permitting the prosecutor to exercise a peremptory challenge after the jury had been sworn and (2) denying the motion to suppress. Resp., Ex. 7.

[3]   *See* Md. Rule 8-302 (petition for writ of certiorari must be filed "no later than the later of 15 days after issuance of the mandate by the Court of Special Appeals or 30 days after the filing of that court's opinion.").

[sic] Counsel Credibility in order to convince Petitioner not to agree to Recall two of the State[']s witnesses.

Resp., Ex. 12 at 2. On October 24, 2013, the Court of Special Appeals summarily denied Kane's application for leave to appeal, with the mandate issuing on November 25, 2013. Resp., Ex. 13.

On October 29, 2013, Kane signed the 28 U.S.C. § 2254 habeas corpus petition that is now before this court. Pet.[4] While it is not a model of clarity, the Petition raised the following grounds for relief:

A. Ineffective assistance of trial counsel for failing to:

1. recall the State's witnesses;
2. call an expert to challenge DNA evidence;
3. challenge the victim's credibility based on her admission that she was sexually active;
4. suppress evidence based on activity that occurred on private property;
5. suppress evidence based on evidence seized from private property in violation of the Fourth Amendment; and
6. raise the State's failure to prove the penetration element of second-degree rape.

B. Ineffective assistance of appellate counsel for failing to:

7. object to the testimony of a forensic nurse based on a discovery violation; and
8. raise the State's failure to prove the penetration element of second-degree rape.

Pet. 6–9.

On January 16, 2014, Respondents filed a response to Kane's petition, arguing that his claims lacked merit and were not colorable under 28 U.S.C. § 2254. Resp. 13. In addition, they argued procedural default, stating that the merits of the claims presented, although addressed in Kane's underlying state post-conviction petition, could not be considered here because they were not delineated as separate claims in Kane's application for leave to appeal the Circuit Court's adverse ruling. *Id.*

---

[4] The Petition was received by the Clerk on October 31, 2013, but is deemed filed on the date it was delivered to prison authorities, which appears to be the date it was signed. *See Houston v. Lack,* 487 U.S. 266, 276 (1988); *United States v. Dorsey,* 988 F.Supp. 917, 919–20 (D. Md. 1998).

3

In examining the procedural default argument, I determined that in seeking leave to appeal the denial of post-conviction relief, Kane expressed dissatisfaction with the post-conviction court's ruling regarding four ineffective assistance of counsel claims: (1) trial counsel's failure to call the roll;[5] (2) counsel's failure at trial and (3) on appeal to object to the State's alleged failure to prove the penetration element of second-degree rape; and (4) trial counsel's failure to recall the victim and her mother to the stand. *See* Order of February 26, 2015, ECF No. 10 at 1-2. Given this finding, I will address the merits of claims (2), (3), and (4) only.[6]

## II. Background

The facts developed at trial, summarized on appeal, follow:

In a two-day trial, the State presented testimony from the victim, her mother, and various police investigators, including Officer McDaniel and Detective Foster, to establish that, after developing a "fatherly" relationship with 14-year-old D.S., the appellant, who was 40 years old, assaulted and raped her.

Ms. J.C., D.S.'s mother, testified that she and D.S. met the appellant through his mother, who lived in the building where J.C. lived with her husband, D.S., and her two other daughters. The appellant "would come to the house, park the car under the tree," and "sit and talk." He promised D.S., who "was going through a lot of problems in school," that "if she finished summer school and she passed the next grade that he would" buy her some clothes "to start back to school." About "two to four times a week" he also "would take her driving," saying "he was teaching" D.S. "how to drive," and "take her to the store, get her little stuff from the store, take her to get something to eat." Eventually, D.S. "started calling him her godfather," and J.C. trusted him with her.

At 6:00 p.m. on September 13, 2008, the appellant brought his daughter over to J.C.'s apartment building. Everyone "went outside" while the appellant's daughter played with J.C.'s three daughters. After a half hour, the appellant's daughter said she was hungry, so J.C. gave D.S. "a $50 bill" and "told her to go get something to eat for everybody." The appellant and D.S. drove to a nearby McDonald's and

---

[5] Kane does not present a claim concerning counsel's failure to call the roll in his federal habeas corpus Petition, Pet. 69; thus, this claim will not be addressed.

[6] Had they been considered on the merits, Kane's defaulted claims either fail to present cognizable federal claims or otherwise provide no basis for habeas corpus relief.

brought food back. Before eating, however, D.S. walked with J.C. to a store about a block away. When they returned, D.S.'s hamburger "was on a car," which upset D.S. After the appellant "told her to stop fussing about a cheeseburger," J.C. returned to her home, leaving D.S. outside with the appellant.

J.C. later received a call from police about D.S., directing her to go immediately to Leonard's Grove. When J.C. arrived, D.S. "was upset and crying," asking to go home.

D.S. testified that she was 14 on September 13, 2008. At that time, she viewed the appellant "kind of like a godfather. A fatherly figure" who "would help [her] out with school. Stuff like that."

When D.S. returned from the store that evening with her mother, she "started fussing and cussing" because her "hamburger was on [the appellant's] dirty car." After her mother "went into the house," D.S. "told [the appellant] he was going to take [her] back to McDonald's to go get [a] hamburger." When they got in the car, however, the appellant did not drive to McDonald's. Instead, they "rode around for like a good five minutes" and he "pulled around the back of the house" on Leonard's Lane. When D.S. "asked what was we doing here," the appellant "started laughing."

The appellant "got out of the car" and came toward D.S. As D.S. got out of the car, the appellant "yanked" her hair down. She told the appellant to stop, but he did not. Instead, "he . . . pushed [her] head down . . . . [t]owards the windshield" so that she "was against . . . [t]he front of the car." The appellant then "pulled [her] pants down" and inserted his penis into her vagina. While D.S. remained "[f]ace down" on the hood of the car, the appellant continued to "pump[] himself. . . in and out of" her "for a good . . . five to ten minutes." She did not give the appellant permission to do that, and he had never done that to her before. When she tried to push herself up, the appellant "grabbed her arm and he pushed [her] down even harder" and "kept on having sex." The appellant stopped only "[w]hen the police pulled up."

On cross-examination, D.S. explained that she did not immediately report the rape to police when they arrived "[b]ecause [she] didn't want nobody to know what had happened." But later, when she had an opportunity to talk to her mother, she told her what the appellant had done.

Officer McDaniel's account of the encounter was consistent with his suppression hearing testimony, as set forth above. When he arrived, he observed the appellant without a shirt and his belt open, "his zipper was down and his pants were open," and "the only thing holding his pants up . . . was his left hand pulling on the side . . .as he ran behind the gray Oldsmobile Aurora that was parked there."

5

Officer McDaniel described D.S. as a "kind of shy but sweet" "[y]oung girl" who "waved to" him whenever he saw her riding down the street. "[A]fter she was separated from Mr. Kane" that evening, the officer "started asking her a few questions," and "[t]he tears just started coming down her face." Based on his observation of the appellant "with his pants down," the officer asked D.S. "if something . . . sexual in nature had happened and . . . if. . . he had hurt her and . . . she kind of nodded her head." When he followed up by asking whether they had sex or were just about to have sex, D.S. "nodded her head 'yes' and just became very upset."

Officer McDaniel identified both an opened Trojan condom wrapper that was "found on the ground at the . . . rear driver's side area of the vehicle where [he] had originally seen [the appellant]" and a "wet and slimy" opened condom that he found "laying on the ground in the exact area where [he] was speaking to Mr. Kane," both of which were admitted into evidence. The officer testified that although the appellant initially denied doing anything wrong, when they arrived in the processing area of the police station, Officer McDaniel showed him the evidence bags with the condom and condom wrapper and asked:

> Well, you're behind a vacant, abandoned house on Leonard's Lane at 8:30 at night with your pants down with a fourteen year old girl and I've got a condom and a condom wrapper here. You're telling me you didn't rape her?

According to Officer McDaniel, the appellant

> kind of just took a deep breath and finally admitted, "The condom and the condom wrapper are mine. I didn't have sex with her. I was about to. I know it was wrong. I wish this didn't happen."

Detective Foster also testified consistently with his suppression hearing account of his post-arrest interview with the appellant. The detective detailed the substance of his conversation with the appellant, whom he described as "talkative." When Detective Foster asked the appellant about the condom "retrieved from the scene," the appellant admitted that he knew D.S.'s age and

> stated that there was a condom. He did in fact have a[n] unwrapped condom in his possession. He later stated that he did not use it nor place it on himself. He further stated that when the police officers arrived he panicked and he put the condom in his mouth and began chewing it. . . .
>
> He didn't say why he had it. . . .

6

> He stated that nothing happened. He also stated that had not the police officers arrived there was a possibility that something would have happened.

The appellant did not repeat that admission in the written statement he later provided. Instead, he wrote only that he "didn't touch [D.S.] at all. Nothing happened at all. Nothing."

A nurse trained in forensic sexual assault examination testified that her physical examination of D.S. revealed bruising on her left upper arm, a tear in the area between her vaginal opening and anus, and abrasions and redness at her vaginal opening and on her cervix.

A forensic scientist from the Maryland State Police laboratory testified that test results from the outside of the condom recovered at the scene were "consistent with the combined known profiles of [D.S.] and Charles Kane" but that those two individuals "cannot account for all the alleles present in this DNA profile." On cross-examination, the scientist explained that this test sample was also positive for amylase, an enzyme found in saliva.

Resp., Ex. 9 at 6–11.

### III. Standard of Review

Kane's claims are analyzed under the statutory framework of the federal habeas statute at 28 U.S.C. § 2254 which sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). This standard is "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, ---, 131 S. Ct. 1388, 1398 (2011); *see also White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014); *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

A federal court may not grant a petitioner's habeas petition where the state court adjudicated the petitioner's habeas claims on the merits unless the state court's decision: (1)

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under 28 U.S.C. § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis under 28 U.S.C. § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 88 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004); *see also Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014). A "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). "Rather, that application must be 'objectively unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409). Thus, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington*, 562 U.S. at 101 (quoting *Williams*, 529 U.S. at 401). Under 28 U.S.C. § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question," a federal habeas court may

not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* (citing *Rice v. Collins*, 546 U.S. 333, 341 (2006)).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). "This is especially so when the [state] court resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* (quoting 28 U.S.C. § 2254(e)(1)).

Further, in order to establish a Sixth Amendment claim of ineffective assistance of counsel, it must be shown that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Representation is deficient if it falls below "an objective standard of reasonableness." *Id.* at 688.

To satisfy the first part of this standard, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 689. A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. A defendant must overcome

the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 562 U.S. at 109. "[W]hen a petitioner's habeas corpus claim is based on alleged ineffective assistance of counsel . . . [t]he AEDPA standard and the *Strickland* standard are dual and overlapping" and the two standards are applied "simultaneously rather than sequentially." *Lee v. Clarke*, 781 F.3d 114, 123 (4th Cir. 2015) (quoting *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012)). "Because both standards of review are 'highly deferential' to the state court's adjudication . . . , 'when the two apply in tandem, the review is doubly so.'" *Id.* (citing and quoting *Harrington*, 562 U.S. at 105) (omissions in original). "When [28 U.S.C.] § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harington*, 562 U.S. at 105.

To satisfy the prejudice prong, a petitioner must show (1) "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *See Strickland*, 466 U.S. at 687, 694. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." A

determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *Strickland*, 466 U.S. at 697.

"Establishing that a state court's application of *Strickland* was unreasonable under [28 U.S.C.] § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* Using this framework, Kane's claims of ineffective assistance of counsel will be considered in turn.

### IV.  Discussion

In rejecting Kane's claim concerning counsel's failure to recall the State's witnesses, the post-conviction court found as follows:

> Petitioner alleges that Trial Counsel's failure to recall the victim and the victim's mother in order to ask the victim why she lied about having sex with the Petitioner and why she allegedly changed her story after the incident denied Petitioner effective assistance of counsel. The question of whether to call a witness is one of trial strategy, to which a court affords great deference, for purposes of analyzing a claim of ineffective assistance of counsel. *State v. Borchardt*, 396 Md. 586, 614, 914 A.2d 1126, 1142 (2007). Defendant has failed to provide any evidence either in his petition or at the August 29 hearing to overcome the presumption that Trial Counsel's decision not to recall these witnesses was sound trial strategy. Before the bench at trial, Trial Counsel noted that he had made a legal decision not to recall the victim and the victim's mother because of his belief that it would not be in his client's best interests. Transcript of Proceedings 9/10/09, pg. 89-92, 92. At the post-conviction hearing, Trial Counsel testified that he decided not to recall the victim and the victim's mother because he believed that the testimony as it stood favored the Petitioner. Further, Trial Counsel testified that he believed that he would undermine the Petitioner's case and cast the Petitioner in a negative light by recalling these witnesses, particularly given the sensitivity of the subject matter. Because the Petitioner has failed to provide any evidence to overcome the presumption that Trial Counsel's decision not to recall the witnesses was sound trial strategy and given Trial Counsel's clear deliberation regarding the consequences of recalling these witnesses, Petitioner's allegation of error on this ground is denied.

Resp., Ex. 11 at 8-9. Trial counsel's strategic decisions relating to which witness to use at trial are entitled to substantial deference under *Strickland*. *See Bunch v. Thompson*, 949 F.2d 1354, 1364 (4th Cir. 1991) (choice of witnesses is a tactical decision to be made by trial counsel). Deference is afforded trial counsel, whose efforts are not to be second-guessed. *Meyer v. Branker*, 506 F.3d 358, 371 (4th Cir. 2007).

Trial counsel's testimony at the post-conviction hearing was consistent with his position articulated at trial. *Compare* Resp., Ex. 11 at 8-9 ("At the post-conviction hearing, Trial Counsel testified that he decided not to recall the victim and the victim's mother because he believed that the testimony as it stood favored the Petitioner."), *with* Resp., Ex. 5 at 92-93 ("I've made a legal determination that I do not wish to recall those witnesses. I don't believe that it is in my client's best legal basis."). Based on the facts as found, the state court's rejection of Kane's claim was a reasonable application of *Strickland* to the facts of the case. The state court's decision survives scrutiny under 28 U.S.C. § 2254(d).

Kane's claim that trial and appellate counsel was ineffective for failing to object to the penetration element of second-degree rape likewise is unavailing. The state post-conviction court examined this claim and found as follows:

> Petitioner claims that Trial Counsel and Appeal Counsel provided ineffective assistance by failing to object when the State allegedly did not prove an element of Second Degree Rape, vaginal penetration by the penis. Petitioner further claims that Appeal Counsel was ineffective by not raising the State's failure to prove an element of both counts of child abuse, that the defendant have permanent or temporary care, custody or responsibility for the supervision of victim. Although these allegations of error are cloaked as ineffective assistance of counsel arguments, it is clear that the Petitioner is attempting to challenge the sufficiency of the evidence presented at trial. It is well-settled that the guilt or innocence of the crime of which a postconviction petitioner stands convicted, and the sufficiency of the evidence to sustain such conviction, are issues which are not reviewable in a post-conviction proceeding. *Greene v. Warden of Md. Penitentiary*, 238 Md. 651, 210 A.2d 729 (1965). Because this Court will not review the sufficiency of the

> evidence against the Petitioner, Petitioner's allegations of error presented on this basis are denied.

Resp., Ex. 11 at 8. The post-conviction court did not expressly examine whether trial and appellate counsel erred in failing to raise this claim on direct review. This omission, however, does not change the outcome of Kane's claim.

Claims alleging ineffective assistance of appellate counsel are analyzed under the *Strickland* standard. *See Smith v. Robins*, 528 U.S. 259, 285 (2000). The record reveals that there was evidence of penetration as stated by the testifying victim. Resp., Ex. 4 at 35-40. This direct evidence was corroborated by significant circumstantial evidence, such as the DNA results of the condom found at the scene and one officer's testimony indicating that, when the officers first confronted Kane, his shirt was off, his belt was undone and his zipper was down. Resp., Ex. 4 at 61, 65–66; Resp., Ex. 5 at 42. No valid basis existed for trial or appellate counsel to argue that the State failed meet its burden of proof with regard to the charge of second-degree rape.

V.   **Conclusion**

For the reasons explained above, I will deny the Petition on the merits and decline to issue a certificate of appealability because Petitioner has not made a "substantial showing of the denial of a constitutional right."[7]

A separate order follows.

---

[7] When a district court dismisses a habeas corpus petition on the merits, a certificate of appealability will not issue unless the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1). A petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or "that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Dated: <u>October 15, 2015</u>                                     <u>        /S/                    </u>
                                                                  Paul W. Grimm
                                                                  United States District Judge